THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ASTERIO MOCTEZUMA VELÁZQUEZ, Defendant and Appellant.

No. CR-70-162. Decided November 16, 1971.

Enrique Miranda Merced for appellant. *Gilberto Gierbolini,* *Solicitor General,* and *Rurico E. Rivera Rivera, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant having been convicted by a jury of the crime of murder in the second degree, and by the court without a jury, for violating § 4 of the Weapons Law, appealed from the sentences which punished him to serve from ten (10) to fifteen (15) years in the penitentiary, and one (1) year in jail respectively, assigning the commission of the following three errors: (1) comments and criticisms of the judge during the cross-examination of the witnesses for the prosecution which deprived him of an impartial trial; (2) improper comments of the prosecuting attorney, and (3) erroneous instruction of the judge to the jury to the effect that "for the self-defense to be duly established it is necessary that defendant had not had any participation whatsoever in the dispute which gave rise to the death."

The evidence for the prosecution showed, in synthesis, that on February 6, 1968, at about some minutes past seven in the evening, the defendant-appellant went to the business of Felipe Velázquez Ramos, located at Ward Tejas of Yabu-

coa, carrying a saber of the kind used to cut cane, and a box of chicken gizzards. He asked for something to eat saying that he was hungry and that he didn't have money. He was told that there were only crackers and cheese and it was given to him. The defendant insisted that he wanted to talk with Felipe Velázquez and he tried to enter the bar where Velázquez was. The latter told him "Keep away from here because you already had a problem with me, you provoked me and I filed complaint against you and they put you in jail because you did wrong here. . . ." The defendant insisted on going behind the bar, and at the moment when he raised the saber, Guadalupe Torres, k/a Lupe Torres, who was at the business establishment, intervened and grabbed the saber and they started to struggle. Velázquez Ramos used the opportunity to go out of his business. The defendant-appellant, who retained the saber, went out also looking for Velázquez Ramos but when he was told that the latter had left, he went into the business again saying "Well I have not been able to get this scoundrel but you are going to pay for it" referring to Lupe Torres to whom he immediately dealt a blow with the machete on the head inflicting a wound on the latter, which according to the testimony of the physician who performed the autopsy on the corpse of Lupe Torres, it was necessarily mortal. After Lupe Torres was knocked down by that wound, the defendant-appellant continued attacking him on the ground, inflicting upon him four more wounds. The evidence for the prosecution revealed also that Lupe Torres did not carry any weapon, that he had not provoked nor attacked defendant-appellant before being attacked by the latter. Doctor Patiño testified that there was no microscopic evidence to determine that Lupe had taken liquor although there was evidence to the effect that he had eaten recently.

The defendant presented evidence to establish the self-defense. His account of the facts, not believed by the jury, was to the effect that he went to Velázquez' business to change

a box of chicken wings that had been sold there to his sister; that the owner of the business did not let him in; that Lupe Torres grabbed his saber by the handle and they struggled, appellant receiving wounds on two fingers; that he kept the saber and then Lupe drew a revolver and aimed it at him both being "very close together"; that he became frightened and gave him the first blow on the head and that there he got blind and was not aware of the other wounds which he inflicted upon the victim; that then he ran away and when going by the house of Marcelino Velázquez they fired two shots at him; that he kept on running until he got to his house where he laid down.

We have examined carefully the transcript of evidence. The "multiple little incidents" as described by defendant-appellant himself are at pages 18, 19, 20, 21, 22, 26, 27, 28, 31, 33, 34, 51, 53, 57, 58, 67, 68 and 75 of the transcript of evidence.

■ The intervention of the judge on multiple occasions was due to the form in which appellant's counsel conducted the cross-examination. He asked confusing questions which not even the judge himself understood, he did not allow the witness to answer his questions, interrupting him unnecessarily and above all he kept repeating one question and another and another about facts already answered more than once, to the point that at the end, when the witness gave an answer, the judge said "answered". Had the judge not intervened, many details in the answers of the witnesses would not have been clarified or would have gone to the jury in a confused manner. On the other hand, the timely intervention of the judge avoided that the trial be prolonged more than it unnecessarily was. See *People* v. *Cardona*, 57 P.R.R. 682 (1940); *People* v. *Camacho*, 69 P.R.R. 332 (1948); *People* v. *Vázquez*, 68 P.R.R. 62 (1948); *People* v. *Román*, 42 P.R.R. 620 (1931); *People* v. *Gómez*, 45 P.R.R. 787 (1933). The

facts in this case do not fall, therefore, within the doctrine of the case of *People* v. *Aletriz*, 85 P.R.R. 621 (1962).

 Neither did the prosecuting attorney make any comment whatsoever which would injure the substantial rights of defendant-appellant. The defendant had testified that after wounding Lupe Torres he went to sleep and on the following day he went to work. The prosecuting attorney then asked him whether the fact of knowing that there was a person whom he had injured did not matter to him. Objection was raised to that question and it was upheld by the court. Then the prosecuting attorney said: "That is all with the witness, Your Honor, the witness himself said it." At that time the comment was untimely. However, in his opening statement to the jury, a proceeding under an information for murder in the first degree being involved, with all the elements which it contains, the prosecuting attorney could argue in regard to the attitude assumed by appellant after having mortally injured a human being. Consequently, a permissible comment by the prosecuting attorney, but uttered at the wrong time, does not injure the rights of the defendant.

 The contention about the instruction to the effect that in claiming self-defense "it is necessary that the person requesting the benefit of self-defense not be to blame for the fight to which he was driven and as a result of which another person died . . ." has been already decided against appellant. *People* v. *Román Marrero*, 96 P.R.R. 777 (1968) ; *People* v. *Marcelino Hernández Maldonado*, per curiam opinion of June 9, 1964. (Advanced Sheet Bar Asso. 1964-112.)

The judgments appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.